J-S86029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| J.R. | |
| Appellant | |
| v. | |
| J.A. | |
| | No. 993 WDA 2016 |

Appeal from the Order April 15, 2016
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2008-2899

BEFORE:  GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED DECEMBER 29, 2016**

J.R. appeals, *pro se*, from the April 15, 2016 order of the Mercer County Court of Common Pleas granting sole legal custody of J.R.R. ("Child") to L.L. and granting partial physical custody to J.R.  We affirm.

J.R. and L.L. are former domestic partners and the parents of 15-year-old Child.  The trial court set forth the lengthy procedural and factual history of this case[1] in its April 15, 2016 custody order, which we adopt and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The parties have been litigating this custody matter since 2008, including three appeals to this Court.

incorporate herein.  **See** Findings of Fact, Conclusions of Law & Order, 4/15/16, at 1-17 ("Trial Ct. Order").

In this appeal, J.R. raises the following issues:

> A. Did the Court err in ordering sole legal custody to [L.L.]?
>
> B. Did the Court err in removing [J.R.] from all access to the minor child's academic, social, medical, and therapeutic support services while making it impossible for the parties to co-parent as a family unit with no direct structures?
>
> C. Did the Court err in not taking into consideration the Guardian ad litem's recommendations as being beneficial?

J.R.'s Br. at 7 (suggested answers omitted).[2]

We review a trial court's custody order for an abuse of discretion.  In doing so,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual

---

[2] The issues listed in J.R.'s statement of questions involved differ from the issues presented in the summary of argument and argument sections of her brief.  In fact, J.R. does not specifically address the second and third issues in her argument section.  In any event, all three issues essentially challenge whether the trial court properly granted L.L. sole legal custody of Child.  Even if J.R. had properly argued her second and third issues, we would affirm on the basis of the trial court's Pennsylvania Rule of Appellate Procedure 1925(a) opinion, which we adopt and incorporate herein.  **See** Rule 1925 Opinion, 8/12/16, at 1-8.

findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa.Super. 2014) (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa.Super. 2011)).

Section 5328(a) of the Child Custody Act delineates 17 factors that a trial court must consider when awarding any form of custody. **See** 23 Pa.C.S. § 5328(a). Here, the trial court separately addressed each factor in its custody order and explained why the majority of the factors weighed in favor of granting sole legal custody to L.L. **See** Trial Ct. Order at 19-29.[3] We agree with and adopt the trial court's reasoning.

At the conclusion of its order, the trial court further explained:

What is . . . clear to the Court from years of litigation between the parties is that the shared legal and/or physical custody arrangement between the parties would be totally adverse to the well-being of this child. The guardian ad litem clearly documented how the stress and anxiety levels of this child increase because of the conflict between [L.L.] and [J.R.], which the Court finds is primarily precipitated by [J.R]. The Court also finds that the only hope for this child to achieve growth in her medical, mental and social condition is to have one person solely in charge of all decisions pertaining to her well-being. [J.R.] has already demonstrated throughout the prior eight years that her methods and approach have not worked and in fact have been detrimental to this child. Thus, the Court finds that it is in the best interest of this minor child that [L.L.] have full legal and physical custody

_____

[3] Although the trial court did not specifically discuss section 5328(a)(2.1), relating to child abuse and the involvement of child protective services, that factor was not relevant to this case. **See** Trial Ct. Order at 20.

of her and that the involvement of [J.R.] be kept to a minimum because of her overpowering influence and control of [Child], and the battles she has created over the years, all to [Child's] detriment.

*Id.* at 29. We conclude that the record supports the trial court's decision to award L.L. sole legal custody of Child.

Order affirmed.[4]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2016

---

[4] In the argument section of her brief, J.R. also asserts that the trial court failed to promptly issue its custody decision in violation of Pennsylvania Rule of Civil Procedure 1915.4(d). However, because J.R. failed to raise this issue in her Pennsylvania Rule of Appellate Procedure 1925(b) statement or in her statement of questions involved, it is waived. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

S 86029-16

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

L L

██████  Plaintiff

v.

JR

██████████████  Defendant

No. 2008-2899

v.

JA

██████████  Additional Defendant

2016 APR 15 PM 1:31
RUTH A. BICE
PROTHONOTARY
FILED IN MERCER COUNTY

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

This heavily litigated custody matter has regularly been before the Court since July of 2008. The Additional Defendant, ██████████ is the child's biological father and has not been involved in the custody proceedings because he is serving a life sentence for first degree murder. The bulk of the litigation has been between the two former domestic partners in this matter, Plaintiff ██████ and Defendant ██████████ Defendant ██████ is the biological mother of the minor child and was granted full custody with supervised visitation only in Plaintiff ██████ by the initial custody Order dated February 20, 2009. Unsatisfied with that Order, ██████████ filed an appeal to the Superior Court which was denied.

Defendant ███ subsequently relocated to the Cincinnati, Ohio area (without prior consent) with the minor child. After relocation hearings were held, the Defendant/mother was ordered to return the child to Mercer County by Order dated August 24, 2010. Defendant ███ also appealed that Order, and it was affirmed on appeal, the Court again entered an Order on July 8, 2011 for her to return the child to Mercer County by August 15, 2011, which she failed to do. Following a contempt hearing, Defendant ███ was found in willful contempt of Court was sentenced to six months of incarceration, with purge conditions, and a bench warrant was issued for her arrest on March 29, 2012.

Plaintiff ███ then filed a petition to modify custody to obtain primary physical custody of the minor child and after a hearing held in the absence of Defendant ███ on October 2, 2012, Plaintiff ███ was granted temporary primary physical custody. All of these Orders were ignored so Plaintiff registered them in Ohio and eventually obtained an Ohio Order on August 23, 2013 for the return of the child. Defendant ███ was apprehended with the child near Cleveland on December 20, 2013 when police pinged her cell phone.

Another temporary custody Order was entered on January 8, 2014 granting temporary primary physical custody to Plaintiff ███ subject to periods of supervised partial physical custody in Defendant ███ supervised by the Mercer County Children and Youth Services agency. Defendant ███ began serving the six month contempt sentence and was released on February 21, 2014 after purging her contempt. The Court also ordered CYS to implement protective services in Plaintiff's home on behalf of the minor child. CYS was eventually

2

dismissed from the case on December 15, 2014 and the supervision was then conducted by ▨▨▨▨▨ with whom Defendant ▨▨▨ resided with in Mercer County. The supervised visitations were ultimately moved and by Order dated March 24, 2015 the parties agreed to a partial physical custody schedule in the Defendant/mother which the parties have been primarily following while they litigated the issue of primary physical custody.

Both parties filed motions to modify existing temporary Orders each seeking primary physical custody and they appeared at the following custody hearings, pro se, on December 1, 2015, December 9, 2015, December 30, 2015 and January 12, 2016. Accordingly, in light of this background, the Court makes the following Findings of Fact in addition to prior Findings of Facts made throughout the past eight years:

## FINDINGS OF FACT

1. With the consent of the parties, ▨▨▨▨▨ LSW, was appointed as guardian ad litem for the minor child, ▨▨▨▨▨ born ▨▨▨▨▨.

2. Ms. ▨▨▨ is 38 years old, married and with two children, ages 16 and 19. Ms. ▨▨▨ is a licensed clinical social worker and her primary experience is as a mobile therapist and behavioral special consultant. She has a Master's Degree in Counseling and she has worked for approximately 15 years in outpatient and inpatient counseling with a focus on children.

3.     Ms. ████ had extensive contact and interaction with the subject minor child in this matter as well as Ms. ████ Ms. ████ and various providers of care and school authorities pertaining to the minor child.

4.     The Court adopts the report of Ms. ████ which is Joint Exhibit No. 1 (with the exception of her recommendation).

5.     Extensive custody litigation has been occurring regularly in this case after Plaintiff and Defendant broke off their former domestic partnership in 2007.

6.     After many court battles and a lengthy initial custody trial, Defendant ████ was awarded full legal and physical custody with supervised visitation in Plaintiff ████ pursuant to the Order dated February 20, 2009.

7.     Defendant ████ appealed that Order which was affirmed by a Memorandum Opinion of the Superior Court on December 22, 2009.

8.     Defendant ████ relocated to the Cincinnati, Ohio area within a few months of the Superior Court's ruling without leave of court or permission from any other party.

9.     Defendant ████ thwarted any and all efforts of the Court and Plaintiff ████ and the child advocate appointed by the Court from the time of separation until she relocated to Ohio to promote and have meaningful time spent between Plaintiff ████ and the minor child.

10.    A relocation hearing was ultimately held and the Court denied relocation by Order dated August 24, 2010 and directed that the child be returned to Mercer County.

4

11. Defendant ████ promptly appealed the relocation Order which was stayed leaving the February 20, 2009 supervised visitation in place, which was to occur in Mercer County.

12. It was rare that the supervised visitations occurred after relocation since the child was five hours away from Mercer County.

13. Superior Court affirmed the denial of relocation on March 28, 2011 directing the child to be returned by August 15, 2011 which did not occur.

14. Defendant ████ was held in willful contempt and sentenced to six months in the Mercer County Jail with purge conditions by Order dated August 29, 2011.

15. Defendant ████ served one day in jail and the next day the Court suspended the sentence so long as Defendant ████ returned the minor child by October 16, 2011 and give the Plaintiff ████ 156 hours of makeup time.

16. A contempt review hearing was held via telephone with Defendant ████ on October 20, 2011 and she had not fulfilled the purge conditions and had not returned the child to Mercer County, but was granted an extension to November 21, 2011.

17. A final contempt hearing was held on March 29, 2012 and Defendant ████ failed to appear, and the Court found she failed to fulfill the purge conditions, including returning the child, and the six month jail sentence was reinstated and a bench warrant was issued for her arrest.

18. Plaintiff ████ filed a petition to modify the 2009 custody Order seeking primary physical custody and a hearing was held on October 2, 2012 and

5

Defendant ████ failed to appear, but the Court received testimony and exhibits and made extensive Findings of Fact, and awarded primary physical custody of the minor child to Plaintiff ████ on December 31, 2012.

19. Those Findings of Fact and Conclusions of Law weighed each of the 16 custody factors, and those December 31, 2012 Findings and Conclusions of Law are incorporated herein by reference.

20. The State of Ohio refused to honor the bench warrant and Pennsylvania's custody Orders, so Plaintiff ████ registered the custody Order in the appropriate county in Ohio which held hearings and affirmed the Order on or about August 23, 2013, but Defendant ████ avoided execution of the Order to return the child when attempts were made by the Ohio authorities to transfer custody.

21. Plaintiff ████ was unable to recover from her herniated disc injuries on her job and therefore stopped working in October of 2013 and relies in part upon her domestic partner of several years for support.

22. Lakewood, Ohio police (which is located near Cleveland) located Defendant ████ with the minor child and contacted Plaintiff ████ who obtained physical custody of the minor child on December 20, 2013 pursuant to the Temporary Custody Order dated December 31, 2012.

23. The minor child has been in the temporary primary physical custody of Plaintiff ████ since December 20, 2013.

24. The Temporary Custody Order also directed Mercer County Children and Youth Services to provide protective services for the child in Plaintiff ███████ home which they did promptly.

25. The temporary Order also directed Plaintiff ██████ to immediately establish medical care for the child's various needs and schedule medical appointments and therapy appointments.

26. CYS monitored the minor child's physical and emotional needs through regular visits from the agency's nurse and by obtaining and reviewing various medical records.

27. The temporary Order also permitted Defendant ██████ to have supervised visits with her minor daughter by CYS until further Order of Court.

28. Defendant ██████ surrendered herself to the custody of the Court on January 8, 2014 at which time a hearing was held in the presence of all parties and CYS, and Defendant ██████ was committed to the Mercer County Jail to serve the balance of her six month contempt sentence imposed August 29, 2011.

29. Defendant ██████ fulfilled her last purge condition and was released from the Mercer County Jail on February 21, 2014 after serving about 44 days of a six month sentence.

30. After being released from jail, Defendant ██████ remained in Mercer County and resided with her friends, ██████████ and ██████████ husband and wife, at their house at ████████████ Mercer, Pennsylvania which is located in the Mercer School District.

7

31. Mr. and Mrs. ████ are in their mid-40's and have one child ████████ who is 12 years old and is a special needs child with a birth defect known as George Syndrome causing various developmental delays.

32. They reside in a raised ranch home and Defendant ████ resides on the bottom level of the home free of charge where she has one bedroom which she shares with the minor child in this matter during her periods of partial physical custody.

33. Defendant ████ and the ████ know each other from various therapy programs that their two daughters were involved in several years ago.

34. Mr. ████ employed and travels throughout the week and is out-of-town roughly 200 nights per year and is home on weekends.

35. Mrs. ████ is employed at the outlet malls but is home a lot.

36. The ████ and Defendant ████ and the subject minor child get along well together and the Laits do not know Plaintiff ████ and are not involved in custody exchanges.

37. Defendant ████ expressed no plans to live anywhere else in Mercer County in the near future and her residence is about 23 miles from the home of Plaintiff ████

38. Defendant ████ gave no explanation as to why she does not reside closer to Plaintiff ████ like the parties did before she left the state with the child.

39. Defendant ████ wants to enroll her minor daughter in the Mercer School District if she receives primary physical custody.

8

40. When the minor child began residing with Plaintiff ████ in December of 2013, the subject minor child has been in the primary physical custody of Defendant ████ continuously and the Court only permitted supervised visits with Defendant ████ and oversight by CYS to assure the safety of the child because of her extensive medical record and Defendant ████ contemptuous behavior. Supervised physical custody between the child and Defendant ████ continued until Defendant ████ proved to the Court that she had a Pennsylvania driver's license and had registered her vehicle in Pennsylvania, and obtained a job in Mercer County. *See* Order dated December 15, 2014.

41. On December 15, 2014, after a year of oversight, Mercer County CYS was granted leave to withdraw from this custody case, provided; however, that ████ would be the supervisor of Ms. ████ periods of partial physical custody.

42. By Order dated January 30, 2015, the supervision of periods of partial physical custody was lifted since Defendant ████ obtained a Pennsylvania driver's license, registered her vehicle in Pennsylvania and obtained employment in Mercer County.

43. Defendant ████ periods of partial physical custody as set by the March 24, 2015 Order permit her to have her daughter every other weekend on Saturday mornings from 10:00 a.m. through Sundays at 7:00 p.m. and every Tuesday after school until 7:00 p.m. A slightly expanded schedule was set for the summer of 2015 by the Order dated May 28, 2015 which reverted back to the March 24, 2015 scheduling order when school reconvened in September of 2015.

9

44. When the subject minor child was placed in temporary physical custody of Plaintiff ███████ in December of 2013, the child was enrolled in the Sharon public school system where she remained until the parties agreed to put her in a private school, St. Stevens, which recently opened in Sharon, Mercer County, Pennsylvania and is specially designed to handle the needs of autistic children.

45. Since residing with Plaintiff ███████ the subject minor child no longer needs an orthopedic stroller/wheelchair, had her GI tube removed and now feeds herself using silverware and eats regular food. In addition, Plaintiff ███████ encourages the child to become as independent as possible by bathing, dressing and feeding herself.

46. The subject minor child's medical issues have greatly improved since residing primarily with Plaintiff ███████ since December of 2013. Notably, the minor child is in good general health and is in no need of specialized medical treatment.

47 The minor child currently has diagnoses of anxiety disorder, autism spectrum disorder, lack of coordination and other Symbolic dysfunction for which she has weekly occupational therapy, physical therapy, speech therapy, outpatient mental health counseling, medication management, and family based services.

48. The child attended the sixth grade for the 2014–2015 academic school year and made significant improvements despite her global developmental delays which impact her socially and lead to poor communication.

49. Nonetheless, due to the conflict between Ms. ███████ and Ms. ███████ the child's anxiety and stress levels vastly increased as Ms. ███████ became more

10

involved again in her life resulting in adverse reactions by the child to going to school.

50. The child again attended the Sharon public school for seventh grade for the 2015-2016 school year but was missing half of the school year leading to her placement at St. Stevens.

51. Several truancy violations were brought against the minor child and Ms. ███ and various hearings were held but Ms. ███ was never found guilty.

52. Truancy support services were put in place.

53. Sharon School authorities noticed that the child's bouts of anxiety seemed to correlate to when she talked with her mother or was going to have a visitation with her.

54. Defendant ███ voiced disagreements at meetings over schooling alternatives in the presence of the minor child and according to the minor child, Ms. ███ told her that Sharon Schools were not right for her and she was disappointed that she was not being Cyber schooled as in Cincinnati.

55. While at Sharon Schools the child had an IEP with learning support and made improvements when she attended.

56. The minor child has difficulty expressing herself, regulating her emotions which lead to aggression and significant anxiety exacerbated by the conflicts between Ms. ███ and Ms. ███

57. The child has difficulty resolving conflicts, making decisions and lacks age-appropriate problem solving skills and takes many of her cues from her mother.

58. When there is significant stress and conflict, the minor child shuts down on an emotional level and resorts to a fight–flight or freeze response.

59. The minor child is visibly anxious when both Ms. ███ and Ms. ███ re present together.

60. The minor child feels forced to choose between the parties.

61. The minor child is very loyal to her mother and has difficulties acknowledging positive interactions between herself and Ms. ███ despite the obvious evidence of their close bond.

62. The subject minor child would prefer to live with her mother.

63. Ms. ███ and Ms. ███ have different parenting styles and approaches for discipline.

64. Ms. ███ has made many mistakes in parenting since the child has been with her since December of 2013, based in part, on the substantial barriers placed in the minor child's mind between Ms ███ and the minor child.

65. Ms. ███ has obviously alienated the affections between Ms. ███ and the minor child in the past eight years and continues to try and control and/or manipulate all aspects of her daughter's life and the contacts she has with Ms. ███

66. The minor child is artistic, inventive and creative, and loves to swim, is very sensitive and loves animals. The truancy problems have decreased since the child has been at St. Stevens School and she appears to like the school and the people.

12

67. Plaintiff ████ has resided at ███████████ Sharon. Mercer County, Pennsylvania since about 2007 and currently resides with her partner, ████████████ who is 45 years old and works as a traffic control specialist with Area Wide Protective Services Monday through Fridays from 7:00 a.m. to 3:30 p.m. and is on call on weekends.

68. Ms ████ s in good health and has no children.

69. Ms. ████ boards a horse in nearby Jamestown, Pennsylvania and the minor child accompanies her and has ridden the horse (once without a helmet) and the minor child likes to be at the farm.

70. Ms. ████ has no relationship with Defendant ████

71. Ms. ████ pays the household bills.

72. Ms. ████ overheard Defendant ████ talking on the phone to the child saying that they are dirty and live in a ghetto and that soon we will not have to deal with these people.

73. Ms. ████ helps with some parenting and participates in Family Planning Services.

74. Plaintiff, ████████ is 48 years of age and her home is a two-story house that she is buying from her brother on an Article of Agreement for $340.00 per month.

75. The house has three bedrooms and the minor child has her own, but prefers to sleep with Plaintiff ████

76. They have a double lot with a fenced in yard, an above ground swimming pool, a trampoline and a club house for the minor child.

13

77. The minor child gets angry with Ms. ████ and upset when she does not get her own way, and Ms. ████ tries to give her time and space.

78. The minor child likes to fish and ride her two-wheel bicycle and go to the family camp in Eldorado, Pennsylvania where they hike on some weekends.

79. Ms. ████ suffers from spinal stenosis and a back injury and last worked at Dean Dairy in August of 2013 and has applied for SSI.

80. There have been many email and text message exchanges between Ms. ████ and Ms ████ some of which have been read by the minor child. Ms. ████ attitude and viewpoint of Ms. ████ has remained constant throughout the last eight years as indicated by Plaintiff's Exhibits 14, 16 and 21, for example, where Ms. ████ has called Ms. ████ an "f-ing cunt" and referred to Ms. ████ as a "court-ordered parent" until you are no longer designated as such, and using other profanities.

81. Ms. ████ and Ms. ████ got into a physical altercation in the child's presence during one of their custody exchanges resulting in each of them being charged with disorderly conduct.

82. After gaining custody of the child, Ms. ████ promptly obtained various medical records and reports from doctors the child was going to in the Cincinnati, Ohio area and she then established all of the necessary medical and other therapy and services for the minor child in Mercer County, Pennsylvania.

83 Plaintiff ████ told local providers that Defendant ████ may be suffering from Munchausen By Proxy Syndrome (a condition suspected by this Court and others throughout this case) which caused those providers to be very

14

skeptical of Ms. ██████ information that she attempted to provide about the child's treatment history and future needs.

84. Ms. ██████ had a difficult time with school and various providers in setting up a trusting relationship, in part, by information given to them by Plaintiff ██████

85. The minor child first attended West Hill Elementary School in Sharon when she returned to Pennsylvania and according to the school principal and the guidance counselor, her attendance declined dramatically after Defendant ██████ resumed litigation shortly after she got out of jail. *See* Plaintiff's Exhibit 34.

86. The child became defiant and had a negative attitude towards school and reported that her mother (Defendant ██████) told her this was not the right place for her and that she should be Cyber schooled. Plaintiff's Exhibit 34. The minor child also advised that she would be fine with attending West Hill if her mother supported that school.

87. The minor child reached important developmental benchmarks at West Hill Elementary in her first two months of school there, which she was not able to reach in the prior 11 years. Plaintiff's Exhibit 34.

88. This child also demonstrated to the school that she "is a bright, courageous and talented individual." Plaintiff's Exhibit 34.

89. Plaintiff ██████ as extended family in Mercer County including her grandparents, two uncles, three aunts and various cousins, but Defendant ██████ has no relatives in this area.

15

90. Defendant ████ has no significant ties to Mercer County, Pennsylvania.

91. During the four years that Defendant ████ had the minor child in the Cincinnati area, they resided with her domestic partner, ████ age 48, at ████ Hamilton, Ohio. Ms. ████ and Ms. ████ have been domestic partners for about seven years but have not resided together for the past two plus years when Ms. ████ returned to Mercer County, Pennsylvania, but they intend to remain partners.

92. The minor child has a close bond with Ms. ████.

93. Ms. ████ is employed and works approximately 50 to 60 hours per week and is unable to travel to Mercer County very often because of her work.

94. Ms. ████ tries to travel to Mercer County every two to three months.

95. Defendant ████ seeks full legal custody of the minor child and does not want Plaintiff ████ involved in any decision making for this minor child and claims that she would stay in Mercer County.

96. Ms. ████ would remove the child from St. Stevens School and put her in the Mercer School District closer to where she now lives and would remove her from outpatient mental health treatment at the Community Counseling Center because of prior conflicts and would instead use St. Anthony's Point and have the child undergo trauma therapy.

97. Defendant ████ would remove the minor child from the Capable Kids Treatment Program where she receives PT, OT and speech therapy and

16

would take her to the Sharon Hospital programs where she was earlier in her life or to New Castle which is in Lawrence County.

98. Ms. ████ would also change the pediatrician back to the child's original doctor or would use a different pediatrician.

99. Ms. ████ would have the child continue to go to Children's Hospital in Pittsburgh for dental treatment so the child life would be involved and would continue with doctor appointments in Pittsburgh for the child's ears and gynecological needs.

100. While Defendant ████ was in Cincinnati for four years, Plaintiff ████ travelled there numerous times to visit with the minor child but was refused access to her by Defendant ████.

101. While in Cincinnati, Defendant ████ was Court ordered to bring the child to Mercer County to see Plaintiff ████ which only happened twice within the first six months of that four-year period.

102. The guardian ad litem disagrees with Defendant ████ and recommends that no significant changes should be made regarding treatment providers and doctors for her education at the time of the hearing.

103. Ms. ████ was charged and found guilty in Ohio of custodial interference, a first degree misdemeanor, and received a 175 day suspended jail sentence.

## CONCLUSIONS OF LAW

Defendant/mother now seeks to resume the full physical and legal custody Order she had after the initial custody hearing in 2009 which she appealed. She

17

still believes that it is not in the best interest of this minor child that Plaintiff ████ ████ have any say whatsoever regarding the minor child's education, medical and/or any other developmental areas of the child, but should be permitted to have visitations on some weekends. It should be noted that the Court's intention in 2009 was that the custodial rights of Plaintiff ████ ████ would be expanded after the Court was satisfied with some supervised visitation of her capability and appreciation for the child's medical conditions, and that Ms. ████ would eventually have shared legal custody rights and expanded unsupervised partial custody to this minor child. However, the extended appeal by Defendant ████ of the initial custody determination put that plan on hold for a substantial period of time. In addition, Defendant ████ failure during that appeal period, and throughout the time of the initial custody proceeding, to make the child available for the supervised visits also thwarted the efforts of the Plaintiff to develop her relationship with the minor child.

Shortly after the appeal was denied, Defendant ████ moved without permission to the Cincinnati, Ohio area to be with her new domestic partner. That relocation was eventually denied by the Court and the child was ordered to be returned to Mercer County. It wasn't until four years later in December of 2013, and thousands of dollars later for legal fees for custody actions in Pennsylvania and Ohio, that the child was finally returned to Mercer County, Pennsylvania when the police located the child outside of Cleveland. While in Ohio, Ms. ████ was supposed to be transporting the child to Mercer County, Pennsylvania for visitations, but only a handful occurred. In addition, despite Ms. ████ claim

18

that Ms. ████ could see the child anytime if she drove to Cincinnati, each time Ms. ████ went to Cincinnati, the visitations never occurred.

Furthermore, many of the extreme medical conditions offered by Defendant ████ over the years to excuse the failed visitations with Ms ████ and to maintain that the child should be in her care, have now been negated. While this minor child still has some developmental delays, is autistic and needs various levels of treatment and a special education program, under the care of Ms. ████ her medical condition has improved dramatically along with the child's ability to perform independent tasks such as feeding, bathing, going to the bathroom, walking and clothing herself.

There have been numerous contempt and special relief hearings in the last several years between the parties that have not been detailed or outlined in the Findings of Facts that are also significant in the Court's determination of what is in the best interest of this minor child in this very unusual custody case. In no time throughout this Court's 13 plus year career, has it ever been necessary to actually sentence a mother to jail. Hence, in line with the Court's duty to evaluate each of the 16 factors under the custody statute, the Court makes the following observations:

**(1)     Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**

The record is clear beyond a shadow of a doubt that Plaintiff ████ is the only party in this custody battle who is likely to encourage and permit frequent and continuing contact between the child and another party. While the child has been

19

in Plaintiff's physical custody, she has permitted the mother and her significant other to have phone contact with the child on a regular basis even though it may have been monitored at times. She has also followed the custody Orders substantially despite the various problems created with the rancor between her and Ms ██████

While Ms ██████ has been reluctant over the past two years to allow Ms. ██████ to travel outside of Mercer County with the child, it is based upon the realistic concern that she will not return the child to Ms. ██████ The history in the past eight years with the substantial non-compliance by Ms. ██████ with every custody Order, and the efforts that it took to have the child returned to Mercer County, justify Ms. ██████ reluctance to permit much travel outside of Mercer County. Accordingly, this factor is completely in favor of ██████

(2)     **The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

Abuse is not a major factor in this custody litigation; however, it has periodically occurred and often in the presence of the minor child. The physical or verbal entanglement between the parties has been ongoing and is likely to continue to occur particularly when they are in a shared legal custody setting.

Obviously, abuse takes many forms. The minor physical abuse that has occurred between Ms. ██████ and Ms. ██████ s infrequent and usually only occurs when one or both parties become extremely frustrated and/or angry.

20

Furthermore, the attitude and mindset of Defendant ███████ as a person who is totally manipulative and totally controlling of persons around her and particularly her child's life. These traits are indicative of a form of abuse. Ms. ███████ has demonstrated in texts and emails and her comments to Ms. ███████ over the years that she has the utmost disdain for Ms. ███████ and will do everything in her power to limit her access to this child. She does that primarily by manipulating people, places and events regarding her child's life.

The Court also views the extent of Ms. ███████ manipulation and control over her minor daughter as being overreaching as well. While there are many benefits to Ms. ███████ knowledge of her child and the various treatment courses, her approach is smothering her daughter's independence and growth. In this Court's mind, it is borderline abusive.

**(3)    The parental duties performed by each party on behalf of the child.**

Both parties are quite capable of performing parental duties and this factor is therefore even

**(4)    The need for stability and continuity in the child's education, family life and community life.**

This minor child needs stability and continuity with regard to her education, family life and community life. To an extent, Ms. ███████ provided that to her except it was always solely on Ms. ███████ terms and conditions. Furthermore, Ms. ███████ has demonstrated with her relocation, and failure to return to Mercer County, a firm belief that only she knows what is in the best interest of this child

21

and it doesn't matter whether a judge, or a significant other, or a physician, or therapist or educator tells her otherwise. Stated simply, it is her way or the highway.

It is also very likely that Ms. ███████ will relocate again since her housing arrangements are only temporary. She plans after receiving full physical custody to change the child's school district, medical providers and counselors. Obviously, this will give Ms. ██████ a fresh start to take control once again of all aspects of her child's life.

On the other hand, Ms. ██████ has lived in the same house and has had the same domestic partner for about seven years. Furthermore, she has had very little change in her life except for her injuries on her job. Moreover, she has very little drama in her life, except that caused by Ms. ███████. Moreover, as pointed out by the guardian, this child needs to be insulated from conflict, and could thrive in a stable setting. Her need for stability is critical to reducing her stress and anxiety which will lead to quicker and more complete development of this child. In short, this is a critical factor in this child's life.

**(5)     The availability of extended family.**

Ms. ██████ has no extended family in Mercer County or in the surrounding area. Ms. ██████ on the other hand, has grandparents, aunts and uncles and cousins in this area as well as her domestic partner of seven years who is family to Ms. ██████

**(6)     The child's sibling relationships.**

There are no sibling relationships in this case.

22

**(7)     The well-reasoned preference of the child, based on the child's maturity and judgment.**

The preference of the minor child in this case is clearly that she wants to be with her mother. However, this position was totally predictable and expected given the overbearing dominance her mother has had on every aspect of her life particularly with whom she should live with, where she should go to school and how she should view other people particularly Ms. ███████ This child's viewpoint is to an extent the reflection of her mother's attitudes.

The preference of the child is not well-reasoned. It is clear from the report of the guardian ad litem, and from this Court's listening to the minor child, as well as the testimony of all the other witnesses including school personnel through documents, that this minor child because of her developmental delays is not capable of making a well-reasoned decision on such complicated areas. Moreover, she appears to simply repeat the position of her mother on critical issues since she has a strong desire to please her mother.

Thus, the preference expressed by the minor child bears little weight with this Court under the circumstances she was placed under for the past decade as well as her developmental delays and the alienation of her affections for Ms ███████

**(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

This is the first case in this Court's 13 year career of such a blatant effort by a parent to turn the child against another parent. In fact, Defendant ███████

23

through her conduct and mindset over the last eight years has proven her promise made to Ms. ███████ in a writing prior to the filing of any custody proceeding between them, that if Ms. ███████ took her to Court, she would **"never ever sign anything that gives you parental acknowledgment, visitation or 'rights or responsibilities' . . . I will fight you with all I am worth with every core of my being."** Plaintiff's Exhibit 9 from the initial custody proceedings resulting in the February 20, 2009 custody Order. Prior to that initial custody proceeding, Ms. ███████ also promised Ms. ███████ in writing that the **"second you serve me with anything, is the second you will no longer get to see her or talk to her or me until you hold an Order that says different."** *Id.*

Ms. ███████ still continues to denigrate Ms. ███████ verbally to the minor child and in emails to Ms. ███████ and/or texts. For example, Ms. ███████ has told her daughter that Ms. ███████ is the enemy, the court-appointed person, kidnapper, etc. Ms. ███████ also tells her daughter that someday they will be free from Ms. ███████ and she will not have to do anything Ms. ███████ asks of her.

In conclusion, this is a clear cut case of parental alienation by Ms. ███████ against Ms. ███████ and this factor is weighted heavily against Ms. ███████ The Ohio authorities seem to agree since she was found guilty of a misdemeanor offense of custodial interference.

(9) **Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

24

Ms. ██████ relationship with her daughter that the Court has come to learn and appreciate over the years is extremely consistent because she totally dominates everything that her child is involved with. However, this domination and control is not nurturing because it is stifling the child's growth including basic human functions such as feeding herself, going to the bathroom herself, bathing herself, dressing herself, etc. Ms. ██████ also stifles the development of her child's emotional needs by making her totally entrenched in the desire to please her mother only. It also appears that many of the medical examinations, doctor's visits and treatments over the years by Ms. ██████ of her minor daughter are very questionable. Accordingly, this Court takes the viewpoint that Ms. ██████ professed love for her daughter is stilted, self-centered and damaging her child's development.

On the other hand, while she has been in the physical care of Ms. ██████ since December of 2013, the child has no major medical problems and, according to the school and her counselors and treatment providers, she has made substantial improvements in her life. While with Ms. ██████ she now feeds herself and uses regular silverware, bathes herself, gets dressed on her own and goes to the bathroom on her own, and no longer needs a GI tube. Clearly her independence is thriving under the imperfect parenting of Ms. ██████ partly because Ms. ██████ is trying to get the minor child to become independent and to grow on her own under the guidance of Ms. ██████ teachers and various medical providers as opposed to the smothering, control and manipulation by Ms. ██████. Therefore, this Court finds that Ms. ██████ is definitely more likely to maintain a

loving, stable, consistent and nurturing relationship with this child that will foster growth in all areas of the child's life.

**(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Both parties will attend to the daily needs of this child. but the question is how they go about it

**(11)  The proximity of the residences of the parties.**

The parties live 25 miles apart. When Ms. ███████ was released from the Mercer County Jail, she chose to live with people she knew on the other side of Mercer County. She gave no explanation as to why she did not try to live closer to Ms. ████ or in the same school district. Ms. ██████ has no prior experience with the Mercer School District or with any medical providers in that side of the county. Thus, Ms. ██████ choice of temporary housing has created a short distance barrier between her and her child. the child's school and medical providers.

**(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

Both parties are equally available to care for the child and have equal ability to make appropriate child-care arrangements. Accordingly, this factor has little bearing on the ruling in this matter.

**(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

26

There has been substantial conflict between Ms. ████ and Ms. ████ throughout the past eight years. Ms. ████ has been very willing and able to cooperate throughout the years with Ms. ████ However, Ms ████ has only occasionally been willing and able to work with Ms. ████ even though there have been times that she claims that she is willing and able to cooperate. Her conduct, however, speaks volumes as well as her continuing attitude against Ms. ████ involvement with her minor daughter. Given the continuing conflict between the parties which has been witnessed over the years by the minor child, and the significant stress and anxiety levels created on this minor child as a result, it is clear that the cause and effect of that conflict on the minor child is not in the child's best interest and must be reduced as much as possible by limiting contact between Ms. ████ and Ms ████

It appears clearly to the Court that the conflict arises primarily out of the manipulative and controlling personality of Ms. ████ Therefore, this factor weighs heavily against Ms. ████ since the Court finds that it is her demeanor and approach that precipitates conflict, which is not in the best interest of this child.

**(14) The history of drug or alcohol abuse of a party or member of a party's household.**

There is no significant drug and/or alcohol abuse history in this case. This factor is irrelevant.

**(15) The mental and physical condition of a party or member of a party's household.**

27

Neither party currently has any mental or physical condition, nor does any member of a party's household, that has any significance in this custody case. The only person with substantial history of mental and/or physical conditions is the minor child herself. Ms. ▆▆▆▆ has back issues that do not appear to interfere with her day-to-day functions or her ability to parent this child. Her past history of anxiety appears to be in remission and is also not a factor in this matter. Accordingly, this factor is of little relevance in this case.

### (16) Any other relevant factor

After years of taking testimony from the parties in this matter, it is the finding of the Court that the demeanor, attitudes and conduct of Ms. ▆▆▆▆ in controlling and manipulating every aspect of this child's life and her constant interference and efforts to sabotage the relationship between the minor child and Ms. ▆▆▆▆ that the Defendant/mother has caused damage that may be irreparable to her child. Ms. ▆▆▆▆ overbearing relationship with her daughter is detrimental to the long-term well-being of her child because she has not been given an opportunity to grow into an independent individual. Furthermore, the record clearly establishes that Ms. ▆▆▆▆ parenting style (which may have been well-intended) has actually stifled her daughter's growth in all areas.

In the last two years when the child has been primarily with Ms. ▆▆▆▆ the child has made far more improvements in all aspects of her life (except the stress and anxiety created by her mother) than was made in the six years before when she was in Ms. ▆▆▆▆ full custody. It is also clear that if the Court were to continue to allow full custody in Ms. ▆▆▆▆ as it did in 2009, that the beneficial

28

relationship between the child and Ms. ▓▓▓▓ would deteriorate, and the Court strongly believes that the child's achievements in the past two years would be for not and the child would regress. It appears that the best hope for this child to develop is unfortunately by limiting her contact and control of her mother.

What is also clear to the Court from years of litigation between the parties is that the shared legal and/or physical custody arrangement between the parties would be totally adverse to the well-being of this child. The guardian ad litem clearly documented how the stress and anxiety levels of this child increase because of the conflict between Ms. ▓▓▓▓ and Ms. ▓▓▓▓▓ which the Court finds is primarily precipitated by Ms ▓▓▓▓▓▓ The Court also finds that the only hope for this child to achieve growth in her medical, mental and social condition is to have one person solely in charge of all decisions pertaining to her well-being. Ms. ▓▓▓▓ has already demonstrated throughout the prior eight years that her methods and approach have not worked and in fact have been detrimental to this child. Thus, the Court finds that it is in the best interest of this minor child that ▓▓▓ ▓▓▓ have full legal and physical custody of her and that the involvement of Ms. ▓▓▓▓ be kept to a minimum because of her overpowering influence and control of her daughter, and the battles she has created over the years, all to her daughter's detriment.

HENCE, THIS ORDER:

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

███████
        Plaintiff

    v.   J. R.
████████████
        Defendant

    v.   J. A.
████████████
        Additional Defendant

No. 2008-2899

2016 APR 15 PM 2: 20
RUTH A. BICE
PROTHONOTARY
FILED IN MERCER COUNTY

## ORDER

AND NOW, on this 15th day of April, 2016, IT IS HEREBY ORDERED that Plaintiff, ████████ shall have full legal (meaning the sole and exclusive right to make all major decisions affecting the best interest of the minor child including, but not limited to, medical, religious and educational decisions) and physical custody (meaning the right to exclusive physical possession of the minor child), ████████ ████████ born ████████████ subject to periods of partial physical custody (meaning the right to take possession of the child for a limited set period of time) in Defendant ████████████ to be exercised only within the geographical boundaries of Mercer County, Pennsylvania, as follows:

1. Every other weekend on Saturday mornings from 10:00 a.m. through Sundays at 7:00 p.m. commencing Saturday, April 23, 2016.

2. ███████████ shall have the right to one phone call per day with the minor child which shall not exceed fifteen (15) minutes in length, and such other communications with the child as agreed upon by Plaintiff, ███████.

3. Such other periods of partial physical custody as agreed to by ████████.

4. Custody exchanges shall occur at the Shenango Valley Mall or any other place agreed upon by the parties.

████████████ shall always encourage the minor child to love and obey ██████████ Neither party shall make any derogatory remarks that can be heard or read by the minor child about the other party. ████████████ shall not advise her minor daughter that she does not belong in any particular school, or that she should be placed in Cyber School, or receive any particular type of diagnostic tests, mental health evaluations and any other sort of treatment of any kind.

Since the parties appeared pro se in this matter, the Court notes that by this Order ████████ has no legal duty or obligation to provide any information to ████████████ regarding academics, medical, dental and/or mental health curriculum, programs, recommendations and/or treatments. Furthermore, this Order means that ████████████ is not legally entitled to copies of any records of any kind pertaining to the minor child ████████████ without the written consent of ████████ Nor is ████████████, without the express consent of ████████ permitted to speak with and/or attend any parent/teacher conferences, doctor appointments, occupational therapy sessions, physical therapy sessions, speech therapy sessions and/or mental health evaluations and/or treatments.

In the event that ███████████period of partial physical custody coincides with Christmas Day and/or Easter Sunday, then that holiday supersedes her period of partial physical custody. IT IS FURTHER ORDERED that ████████ ██████shall not be permitted to remove the child from Mercer County at any time without the express written permission of ██████████

**Residence and Relocation of Parties:** Each party shall maintain her current residence and in the event either party intends to change her residence, then they shall give the other party at least thirty (30) days written notice of the date of the move and the new address and telephone number. **However, the law has special rules that are mandatory before a party can move, but these rules do not apply to all relocations. The rules set forth below only apply to "relocations" that meet the definition in 23 Pa. C.S.A. § 5322(a): "A change in a residence of the child which significantly impairs the ability of the non-relocating party to exercise custodial rights." Therefore, any party who intends to change the residence of a child, that significantly impairs the non-relocating party's custody rights, must give the other party sixty (60) days advance written notice by certified US mail, return receipt requested and by regular US mail, of his or her intent to relocate and provide the following in that notice pursuant to 23 Pa. C.S.A. § 5337:**

1.      The address of the intended new residence.

2.      The mailing address, if not the same as the address of the intended new residence.

3.      Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

4.    The home telephone number of the intended new residence, if available.

5.    The name of the new school district and school.

6.    The date of the proposed relocation.

7.    The reasons for the proposed relocation.

8.    A proposal for a revised custody schedule.

9.    Any other information which the party proposing the relocation deems appropriate.

10.    A counter-affidavit as provided under 23 Pa. C.S. 5337 (d) (1) which can be used by the non-relocating party to object to the proposed relocation and the modification of the custody order.

11.    A warning to the non-relocating party that if the non-relocating party does not file with this Court an objection to the proposed relocation within thirty (30) days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

This Court retains jurisdiction in this matter.

BY THE COURT:

_____ J.
Christopher J. St. John, Judge

rmb

4/15/16

cc: ▓▓▓▓▓▓▓▓▓▓ casa Board, atty
Gilchrist, atty Smith, J. Archer,
Menois Merty, KSW

FILED IN MERCER
COUNTY

2016 AUG 12 PM 3: 08

RUTH A. BICE
PROTHONOTARY

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

L▇▇A L▇▇▇▇
    Plaintiff

  v.

J▇ANNE▇▇E R▇▇WA▇
    Defendant

  v.

J▇▇M A▇CH▇▇,
    Additional Defendant

     No. 2008-2899

### RULE 1925 OPINION

This is a custody case regarding a teenage girl who was born during a domestic relationship between appellant, ▇▇▇▇▇▇▇ ▇▇▇▇▇ and appellee, ▇▇▇▇ ▇▇▇▇▇ This is a heavily litigated custody matter that has come before this Court off and on since July of 2008. This is also the third appeal to the Superior Court filed by appellant following an Order of this Court. All of those appeals have been unsuccessful.

The Superior Court is directed to the 29 pages of Findings of Fact, Conclusions of Law and the most recent custody Order dated April 15, 2016.

---

[1] Additional Defendant, ▇▇▇▇▇ ▇▇▇▇▇ is the biological father of the subject minor child. However, he is serving a life sentence for a murder that occurred unrelated to this matter after the child was conceived. He is also appellee's nephew and was chosen by appellant and appellee to father a

Essentially, appellant is the biological mother of J.R. who was born and raised by these two domestic partners in the first five years of the child's life. Their breakup thereafter led to appellant's refusal to let appellee continue to co-parent J.R. prompting appellee to file a custody complaint. Appellant had promised appellee in an email that she would fight her with every breath of her being against custody. Appellant has been true to her word and has thrown many hurdles in front of appellee to prevent and/or frustrate her relationship with the minor child for the past eight years.

Appellant was initially granted full custody with supervised visitation in appellee by Order dated February 20, 2009. The reason for supervised visitations was because of the alleged poor health of the minor child and the Court wanted to make sure that appellee's relationship with the child was rekindled and that she was capable of handling these various medical problems. The ultimate hope of the Court at that time was that the rancor between the parties would subside, the relationship between the minor child and appellee would be rekindled and appellee would be proven capable of caring for the child's various medical and emotional issues.

Unfortunately, appellant engaged in an extended course of conduct over the last eight years to interfere deliberately with the custody rights of appellee. At first, appellant hid behind a myriad of medical and emotional problems as a reason to cancel numerous supervised visitations. Then, she relocated to the Cincinnati, Ohio area without leave of Court or permission from appellee. She left the only home the child had known, a home that was in appellant's name, but a mortgage was only in the appellee's name, and appellant refused to pay the mortgage.

2

Furthermore, appellant left Mercer County where she had established all of her medical providers for her child including multiple therapists over the years and left a steady income stream behind without any substitute income stream in Ohio.

In the meantime, the child's home was lost in a mortgage foreclosure action since appellee was not aware in time of the default so that she could cure it, so appellant was permitted to remain in Ohio with the child until the relocation litigation had been concluded. While that litigation was pending, appellee was again given the right to have visitations with the child, but appellant was ordered to bring the child to Pennsylvania for those visitations. Again, appellant had tons of excuses none of which the Court found valid to avoid bringing the child to Mercer County for visitations.

Appellant was ordered to relocate the child to Mercer County by Order dated August 24, 2010, which was upheld on appeal. Appellant ignored that Order and subsequent Orders giving her additional time to make living arrangements back in Mercer County, but she was obviously stalling and the Court finally held her in contempt of Court for willfully violating its Orders and sentenced her to a six month term of incarceration with purge conditions and issued a warrant for her arrest on March 29, 2012.

Appellee filed a motion to modify custody seeking primary physical custody of the minor child and she was granted temporary primary physical custody on October 2, 2012 pending the return of the child to Mercer County and oversight by Mercer County CYS to make sure that the child was safe, that appellee's home was appropriate and that any medical providers were in place if needed for the child's care. Appellee registered the 2012 Mercer County Order in Cincinnati, Ohio and

3

116

Appellant's first issue in her Concise Statement of Matters Complained Of is that the Court failed to adopt the recommendation of the guardian ad litem of shared legal custody. The guardian ad litem made 14 recommendations to the Court. Jt. Ex. 1 pgs. 12-16. In paragraph 8(a) of the report, the GAL opined that J.R. would benefit from joint legal custody for equal decisions. The GAL, however, discussed in her testimony and throughout her report the negative impact the conflict between appellant and appellee caused to J.R. Moreover, the record is replete with conflict between the parties on medical treatment, counseling, therapy and education. Appellee had a much different view of how to address J.R.'s needs than appellant. The GAL seemed to support the position of appellee and could not emphasize enough how the parties' disputes exacerbated J.R.'s significant anxiety problems.

It is also noteworthy that appellant is extremely controlling and is not capable (as demonstrated over the past eight years) of considering any viewpoint from appellee on any issue pertaining to J.R. Simply stated, it is appellant's way or the highway. Throughout this trial, and other proceedings, appellant always attacked the opinions and ability of appellee to make appropriate decisions for J.R. This position was flatly rejected by the Court and the credible evidence showed that J.R. has made vast improvements and gained more independence over the past two years when in the primary physical custody of appellee. Notably, the GAL stated in her report that co-parenting was not a viable option in this case and that "flexibility leaves room for conflict and battles over power and control." Id.

Obviously, the recommendation of the guardian was just one piece of evidence in the possession of the Court when weighing all of the 16 custody factors. The Court ultimately declined to follow the recommendation of the GAL because of

5

all of the other sordid history involved in the case and the Court's ultimate conclusion that the best interests of J.R. were not being served over all of these years by appellant by withholding and interfering with the custody rights of the appellee. In addition, the Court found that appellant's conduct in controlling and manipulating every single aspect of her child's life and constantly interfering with the relationship between J.R. and appellee, that the child has probably suffered irreparable damage. Moreover, the Court found that appellant's overbearing relationship with her daughter was detrimental to the long-term wellbeing of the child since she was preventing her child from developing the social, emotional and physical skills necessary to be independent and to mature. See the Court's discussion of Factor 16 on page 28 of the Conclusions of Law.

In contrast, since the child has been with appellee for the past two years, she has improved leaps and bounds beyond the way she was for the preceding six years while in the custody exclusively of the appellant. In addition, as noted often in the GAL report, the conflict caused by Ms. ████████ in the past two years has continued to exacerbate emotional problems with the child and has caused the child to rebel against efforts by appellee and school authorities to improve her life. For example, appellant would tell her daughter that when she gets her back, she will be homeschooled and she should be homeschooled and does not have to worry about being mainstreamed where she was initially thriving before appellant was granted more extensive contact with her after her jail stint.

Thus, in considering all of the evidence the Court has heard since 2008, and particularly the misinformation given to the Court over the years by appellant, it was clear that her role in this child's life was detrimental to that child and that any

6

extensive involvement in decision-making processes involving her child would lead to conflict, which would lead to disruption in this child's development. For that reason and many other reasons, the Court granted full physical custody to appellee with periods of visitation in the appellant. That was the corner that appellant's conduct over the years forced the Court and the child into. She has no one but herself to blame and has even indicated at times throughout Court proceedings in her weak moments that she is her own worst enemy.

The other side of appellant's argument is that it was error to prevent her "access to academic, social, medical and therapeutic support services for the child" so that she can learn to co-parent with appellee. The last thing this Court wanted to do was to limit appellant's involvement with her minor child. However, appellant over the years left the Court with no choice once it became obvious when the child was placed into the custody of appellee, that the child was thriving, growing emotionally and socially and was becoming more independent without the constant day-to-day, minute-to-minute control and manipulation of appellant. It also became apparent throughout the last two years that as appellant became more involved with her child again, even though the child was in appellee's primary physical custody, the stress level and anxiety in her child increased dramatically. The primary source of that increased anxiety and stress was appellant. Unfortunately, the only way to remove that problem was to narrow and limit the involvement of appellant mother.

There is no doubt that the child is in a better place with appellee having full custody and control over all decisions of how to overcome the damage that appellant mother unwittingly caused to the development of her minor child. J.R.'s

7

only hope for the future was unfortunately to remove the source of that conflict. Thus, it was with a heavy heart that this Court felt compelled to grant full custody to appellee with visitation rights only to the appellant mother. Hence, for the foregoing reasons and the reasons set forth in the various 1925 Opinions, Findings of Facts, Conclusions of Law and Orders issued throughout the history of this case including numerous contempt proceedings against appellant mother for failure to follow Court ordered visitations for appellee, this Court suggests that the custody Order entered in this matter on April 15, 2016 be affirmed.

BY THE COURT:

Date: August 12, 2016

_____ J.
Christopher J. St. John, Judge

rmb

